People of State of Illinois ex rel. Yvonne Harmon, Appellant, v. Frank G. Thompson, Director of Department of Registration and Education of State of Illinois, Appellee.

Gen. No. 43,148.

Heard in the third division of this court for the first district at the June term, 1945. Opinion filed November 7, 1945. Released for publication November 27, 1945.

Joseph D. Teitelbaum, of Chicago, for appellant.

George F. Barrett, Attorney General, for appellee; William C. Wines, Assistant Attorney General, of counsel.

Mr. Presiding Justice Kiley delivered the opinion of the court.

This is a mandamus proceeding to compel the defendant to permit plaintiff to take an examination for a license to practice osteopathy. The writ was denied and plaintiff was granted leave to appeal after 90 days from the entry of the judgment. Chap. 110, par. 200 (1) [Jones Ill. Stats. Ann. 104.076, subpar. (1)].

The case stands here upon plaintiff's petition for leave to appeal, defendant's answer and plaintiff's suggestions in reply. Defendant's argument in his brief is limited to the single point that the trial court was without jurisdiction because of improper venue and faulty service of process.

It is averred in the answer that although the entire transaction complained of by plaintiff occurred in Sangamon County, she began suit in Cook County and although defendant resides in Morgan County, the only process was delivery of a copy of the summons at the Chicago office of the Department of Registration and Education. Defendant says that these averments were properly presented by answer under the Practice Act, Chap. 110, par. 172 (4) [Jones Ill. Stats. Ann. 104.048, subpar. (4)], and are admitted because plaintiff filed no reply.

The record does not disclose that defendant urged these defenses at the trial. There is no record that they were ruled upon. The report of the proceedings is certified by the trial judge as "a true and correct copy of all proceedings" in the case and is approved as such by the Attorney General.

■■ Defendant proceeded to trial on the merits without pressing his objection to the venue, (Chap. 110, par. 135 [Jones Ill. Stats. Ann. 104.011]), and to the process. By failing to have these defenses ruled upon in the trial court, and submitting to trial, de-

fendant has waived the right to present them on appeal.

Plaintiff was graduated with a doctor's degree from the Chicago College of Osteopathy, June, 1942. She applied to the department on two occasions thereafter for leave to take the State examinations for a license to practice. Following the second denial she brought this action.

The issue made by pleadings is whether her secondary schooling meets the requirement of the Medical Practice Act. Chap. 91, Secs. 1–16 [Jones Ill. Stats. Ann. 79.01 *et seq.*]. The examination for a license is required by section 3 of the Act. Minimum standards for the examinations and issuing licenses are provided in section 5. Plaintiff's application was governed by section 5, paragraph 2 (b) which provides:

" . . . that such · . . . college . . . at the time of his graduation required as a prerequisite to admission thereto a *four years' course* of instruction in a high school, and as a prerequisite to graduation therefrom a *four years' course* of instruction . . . of not less than *eight* months each, . . . , the time elapsing between the beginning of the first year and ending of the fourth year . . . having been not, less than thirty-six (36) months, such high school and such . . . college . . . having been reputable and in good standing in the judgment of the department;".

Defendant's answer admitted the college was in good standing, but denied the high school which plaintiff attended was in good standing. There is no dispute in the evidence. Plaintiff was the only witness at the trial.

In order to qualify for admission to the college, plaintiff had studied in a state chartered adult high

school and under private tutelage to gain 15 high school credits. To give proper value to the credits she took University of Illinois examinations in the high school subjects in 1937. She was admitted to the College in September, 1937, when she had passed the University of Illinois examinations covering 12½ credits. The balance of the examinations had not then been graded. The College in admitting her assumed that she had 15 credits since she had completed the high school study and taken the University examinations. She was successful in the University examinations to the extent of two credits, but failed in physiography with a value of one-half credit. The College consented to her continued study on condition that she would make up the deficiency by examination. She failed in three examinations on the subject, however, abandoned that subject and with consent of the College studied organic chemistry at Lewis Institute, in Chicago in the summer of 1938. She completed the summer course, overcame the one-half credit deficiency and in due course was graduated from the College.

We have not the benefit in defendant's brief of his argument on the merits of this case. At the trial the Attorney General stated the defendant's position was that the Act required "four years of time in a high school" and that plaintiff had completed part of her high school work after entering the College. Furthermore, it was stated that the Department required a high school diploma as evidence of completion of the four years' high school course. In oral argument in this court, it was admitted on the part of the defendant that four years of high school is not required under the Act. Defendant contends that since plaintiff when she entered the College had not 15 credits, the equivalent of four years' high school, she did not qualify for the examination under the Act.

The question is whether plaintiff should be disqualified because when admitted to the College she was deficient in credits.

The College was in good standing with the Department when plaintiff entered. It considered her qualified to study osteopathy and admitted her assuming she had passed the University examinations. We believe there would have been no objection had the College, within a reasonable time after the beginning of its school year, admitted plaintiff with 15 credits. It follows there could be no reasonable objection to plaintiff's having started study at the beginning of the year had later results of the examinations proved she passed in all the subjects.

The complaint is, however, that she entered with less than 15 credits. A consistent adherence to this position, would disqualify plaintiff even though she had passed all the examinations. The Act does not require 15 credits. There was no requirement under its provisions, that plaintiff must have had a high school education. The requirement was that the College *at the time of plaintiff's graduation* should require as a prerequisite to admission, "a four years' course . . . ."

██ It is a matter of common knowledge that colleges and universities exercise a certain discretion in their admission requirements. Moreover, the tendency in judging educational attainments is strongly toward considerations of abilities rather than records or credits. Plaintiff repeatedly failed the conditional examination given her in physiography at the College. We do not doubt that many eminent physicians would fail examinations in that subject. In the summer succeeding her admission, she acquired the one-half credit in organic chemistry. If she had passed the University examination in physiography in the Summer of 1937, the Department, we assume from its

position here, would have found her qualified to take the examination denied her. It seems to us she was better qualified after her creditable study in organic chemistry. We believe the discretion of the College extended to permitting plaintiff to continue study on the condition that she make up one-half credit.

The trial court apparently believed that plaintiff was a very competent person. The record shows that she has passed examinations in Wisconsin and Michigan to qualify for practice of osteopathy.

Under the circumstances in this case we think a grave injustice will be done if plaintiff is denied the writ of mandamus.

For the reasons given the judgment of the Superior Court is reversed and the cause is remanded with directions to enter judgment for plaintiff that the writ issue as prayed.

*Reversed and remanded with directions.*

LEWE and BURKE, JJ., concur.