SECOND DIVISION

                                     Date Filed: May 17, 2005

No. 1-03-3114

THE PEOPLE OF THE STATE OF ILLINOIS,   ) Appeal from the

                                       ) Circuit Court of

           Plaintiff-Appellee,         ) Cook County.

                                       )

           v.                          )

                                       ) No. 95 CR 15763

                                       )

BERNARD TAYLOR,                        ) Honorable

                                       ) James Schreier,

           Defendant-Appellant.        ) Judge Presiding.

     JUSTICE HALL delivered the opinion of the court:                                     

     In 1997, following a conference pursuant to Supreme Court Rule 402 (177 Ill. 2d R. 402), the defendant, Bernard Taylor, pleaded guilty to the murder of Terrance Brownlow.  The defendant was sentenced to 55 years in prison.  In 1999, the defendant filed a 
pro
 
se
 postconviction petition alleging the ineffective assistance of trial counsel.  The defendant was appointed counsel and filed a supplemental petition.  Following a hearing pursuant to section 122-6 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-6 (West 2002)), Circuit Court Judge James Schreier, who had presided over guilty plea proceedings, denied the petition. 

     On appeal, the defendant does not challenge the denial of his postconviction petition.  Rather, the defendant contends that Judge Schreier's conduct during the evidentiary hearing deprived him of his right to a fair and impartial hearing and of his right to make a closing argument. 
  

     At issue in the evidentiary hearing were the defendant's claims that at the Rule 402 conference, Steve Wagner, his trial counsel, failed to provide Judge Schreier with corroboration of the fact that Mr. Brownlow had shot the defendant on two occasions prior to his death at the hands of the defendant.  The defendant further alleged that Mr. Wagner failed to file a motion to vacate his guilty plea after agreeing to do so.       

     Postconviction counsel called Shawn King, who testified that following one of the shootings by Mr. Brownlow, he was in the hospital at the same time as the defendant.  Judge Schreier interrupted postconviction counsel's direct examination of Mr. King several times to ascertain certain facts such as whether Mr. King saw the defendant get shot, whether anyone was prosecuted in connection with his shooting and whether Mr. King was with the defendant during the incident.  Judge Schreier continued to pose questions to Mr. King during cross-examination by the prosecutor.       Under questioning by postconviction counsel, the defendant testified that he had informed Mr. Wagner of the two incidents in which he had been shot by Mr. Brownlow.  After each shooting, the defendant was treated at a hospital.  The defendant did not press charges because he was afraid for his family.  When postconviction counsel asked if the defendant understood that a beating he received was at the direction of Mr. Brownlow, Judge Schreier interjected "Sustained."  Judge Schreier then asked if the defendant had reported the beating to the police, and the defendant responded that he had not reported it.

     During postconviction counsel's direct examination of Mr. Wagner, Judge Schreier asked if Mr. Wagner recalled if the fact that defendant had never pressed charges against Mr. Brownlow or had him arrested had been brought up during the Rule 402 conference.  Judge Schreier stated for the record that he had no notes of the conference.  Judge Schreier inquired whether Mr. Wagner recalled if, after discussing Mr. Brownlow's record and problems with the defendant, Judge Schreier had reduced the maximum nonextended term of 60 years the State requested to 55 years in recognition that the defendant was provoked into the execution-style murder of Mr. Brownlow.  Mr. Wagner responded that Judge Schreier had questioned why the State was not proceeding on the habitual offender petition, and the parties had informed the judge of Mr. Brownlow's background and the defendant's representations about the prior incidents.  Judge Schreier then stated as follows:

     "For the record, I do remember discussing Brownlows [
sic
] doing something to the defendant whether it was shooting him once before, whether it was shooting him twice before, I can't remember at this time these years later.  For the record, I do remember during the course of this plea conference being told that the deceased had injured and wronged the defendant.  Proceed."  

     At the conclusion of postconviction counsel's direct examination of Mr. Wagner, Judge Schreier announced "Cross-examination" and proceeded to question Mr. Wagner as to whether the law in effect at the time the defendant was sentenced allowed day-for-day good-time credit.  During the prosecutor's cross-examination of Mr. Wagner, Judge Schreier noted that he had advised the defendant that it was not a death penalty case.  Based upon the defendant's two previous Class X convictions, had he been convicted of Mr. Brownlow's murder, Mr. Wagner agreed that the defendant was eligible to be sentenced to natural life in prison if the State had filed an habitual offender petition.  

    On direct examination by the prosecutor, Anita Alvarez, the assistant State's Attorney who had represented the State during the guilty plea proceedings, testified that, while she requested that the defendant be sentenced to 60 years, Judge Schreier indicated he would impose a 55-year sentence.  Judge Schreier noted that the transcript of the guilty plea proceedings reflected the State's recommendation of 60 years and his determination to impose 55 years.   During cross-examination by postconviction counsel, Judge Schreier questioned Ms. Alvarez as to whether she would have gone forward with the habitual offender petition and sought a natural life sentence if the defendant had been convicted in this case. 

     Postconviction counsel commenced her closing argument by pointing out that Judge Schreier had not been presented with corroboration that the defendant had been shot by Mr. Brownlow.  Judge Schreier interrupted her argument to state that Mr. Brownlow's rap sheet provided corroboration.  Postconviction counsel argued that it was never properly explained to Judge Schreier why Mr. Brownlow's death was not simply an execution, as the evidence showed.  Judge Schreier responded that the past wrongs between the defendant and Mr. Brownlow had been presented at the Rule 402 conference.  When postconviction counsel argued that there had been no specificity as to the shooting allegations, Judge Schreier pointed out that the records would only have corroborated the fact that the defendant did not name Mr. Brownlow as the individual who shot him.  Judge Schreier was skeptical of the defendant's explanation that he was afraid, due to his background and his shooting Mr. Brownlow in the back of the head, execution style.  

     Judge Schreier pointed out that, if the defendant was successful in having his plea vacated, the State would very likely ask for a natural life sentence.  According to Judge Schreier, given the backgrounds of the defendant and Mr. Brownlow, even if Mr. Wagner had presented more documentation, it would not have had much effect.  Judge Schreier also noted that he had not imposed the 60-year sentence requested by the State.  Judge Schreier then instructed postconviction counsel to continue her argument. 

     Postconviction counsel argued that the defendant's failure to prosecute Mr. Brownlow was understandable given people's mistrust of the police.  When she referred to Mr. King's testimony that he learned that Mr. Brownlow had shot him, Judge Schreier interjected that Mr. King did not know who shot him.   Postconviction counsel continued her argument that Mr. Wagner should have presented more mitigation to explain what looked like the cold-blooded execution of Mr. Brownlow.  Postconviction counsel stated that, when the defendant saw Mr. Brownlow at the gas pump, he did not know what Mr. Brownlow was doing.  The following colloquy occurred at the hearing:

     "THE COURT: The stipulated facts with the plea were that the victim was pumping gas and the defendant came behind him and shot him in the back of the head.

      MS. AGBABIAKA (postconviction counsel): What the Court was not apprise [
sic
] of is what Mr. Taylor's view of him with that pump in his hand and what movement he saw him to reach for a weapon that day.  That was not presented to the Court.  That based on what he thought he saw as a weapon and the movement - -

      THE COURT: If that is true, if that is true page eight of the transcript it says by me; The sentence you are expecting is 55 years in the llinois [
sic
] Department of Corrections.  And the defendant says that was fair, Your Honor.

      MS. AGBABIAKA: That is based on again because you heard him testify that his attorney told him that the state was looking for 120 - - 

      THE COURT: No, I responded by saying to your argument that he thought he was going to get killed at the gas station, the defendant.

      MS. AGBABIAKA: He did based on those prior encounters.

      THE COURT: He wouldn't say he thought it was a fair sentence if he thought he was about to be killed."  

     Following the prosecutor's argument, Judge Schreier denied the defendant's postconviction petition.  This appeal followed.  

ANALYSIS

I. 
Waiver

      At the outset, we address the State's contention that the defendant has waived the issues he raises on appeal.  The State points out that the defendant failed to raise the issues in his postconviction petition.  See 725 ILCS 5/122-3 (West 2002).  However, the defendant is not seeking relief in this appeal based on errors that resulted in his underlying conviction and sentence but to have his case remanded for a fair evidentiary hearing.  Moreover, the State's contention would prevent the defendant from appealing errors occurring during his evidentiary hearing.  

     The State then points out that the defendant failed to object to Judge Schreier's conduct at the evidentiary hearing. However, this court has previously observed that the fundamental importance of a fair trial and the practical difficulties involved in objecting to the trial court's conduct compel a less rigid application of the waiver rule.  
People v. Stevens
, 338 Ill. App. 3d 806, 810, 790 N.E.2d 52 (2003).  We choose not to invoke the waiver rule in this case. 
     

II. 
Fair Hearing

     The defendant contends that he was denied his due process right to a fair hearing not because Judge Schreier was biased against him but because the judge acted as an advocate for the State rather than an impartial finder of fact.

A. Standard of Review

      The defendant argues that 
de
 
novo
 review is appropriate since the facts and credibility of the witnesses are not at issue.  However, it is an abuse of discretion for a trial judge to assume the role of an advocate.  
People v. Smith
, 299 Ill. App. 3d 1056, 1064, 702 N.E.2d 218 (1998).  The appropriate scope of questioning is determined by the facts and circumstances of the case.  
Smith
, 299 Ill. App. 3d at 1062.  Therefore, the abuse of discretion standard applies to this issue.

B. Discussion

     The Illinois Supreme Court has held that a fair trial is a fundamental right in all criminal prosecutions and that a denial of this right is a denial of the procedural due process guaranteed litigants under both the United States (U.S. Const, amend. XIV) and Illinois (Ill. Const. 1970, art. I, §2) Constitutions.  
People v. Hattery
, 183 Ill. App. 3d 785, 801, 539 N.E.2d 368 (1989).  "The right of a defendant to an unbiased, open-minded trier of fact is so fundamental to our system of jurisprudence that it should not require either citation or explanation."  
People v. Eckert
, 194 Ill. App. 3d 667, 673, 551 N.E.2d 820 (1990).  It is rooted in the constitutional guaranty of due process of law and entitles a defendant to a fair and impartial trial before a court which proceeds, not arbitrarily or capriciously, but upon inquiry, and renders a judgment only after trial.  
Eckert
, 194 Ill. App. 3d at 673.  

     In support of their respective arguments, both the defendant and the State rely on case law from criminal trial proceedings rather than from postconviction evidentiary hearings.  A postconviction proceeding is not a criminal prosecution.  It is a collateral attack on a prior conviction and sentence.  
People v. Towns
, 182 Ill. 2d 491, 502, 696 N.E.2d 1128 (1998).  Nonetheless, the parties agree and Illinois case law supports the application of the fair trial guaranty of an impartial judge to an evidentiary hearing under the Act.  In 
People v. Lyons
, 8 Ill. App. 3d 647, 291 N.E.2d 25 (1972), the reviewing court determined that the judge's statements concerning trial counsel, made prior to the commencement of a postconviction evidentiary hearing, were wholly insufficient to show a preconceived opinion of trial counsel's credibility or a bias in his favor so as to deprive the defendant of a fair hearing.  
Lyons
, 8 Ill. App. 3d at 649.  The reviewing court also noted that the judge made every effort to provide the defendant with a fair hearing.  
Lyons
, 8 Ill. App. 3d at 648-49.  See
 
People v. Reynolds
, 284 Ill. App. 3d 611, 617, 673 N.E.2d 720 (1996) (though it did not reach fair trial issue, the reviewing court noted that the postconviction judge's association with the trial judge and trial counsel raised questions regarding her impartiality and, on remand, ordered the postconviction hearing assigned to another judge).  Since the impartiality requirement applies in both criminal trials and postconviction evidentiary hearings, we will take guidance from those cases.

     The applicable principal of law was stated by this court in 
People v. Rega
, 271 Ill. App. 3d 17, 648 N.E.2d 130 (1995), as follows:

     "'It is the judge's duty to see that justice is done, and where justice is liable to fail because a certain fact has not been developed or a certain line of inquiry has not been pursued it is his duty to interpose and either by suggestions to counsel or an examination conducted by himself avoid the miscarriage of justice, but in so doing he must not forget the function of the judge and assume that of the advocate.'"  
Rega
, 271 Ill. App. 3d at 23, quoting 
People v. Lurie
, 276 Ill. 630, 641, 115 N.E. 130 (1917).  

There is a line of judicial propriety, and it "'is clearly crossed when the judge departs from his function as a judge and assumes the role of prosecutor.'"  
Rega
, 271 Ill. App. 3d at 24, quoting 
People v. McGrath
, 80 Ill. App. 2d 229, 236, 224 N.E.2d 660 (1967).  We must determine whether Judge Schreier, by his conduct in the case, crossed the line of judicial propriety and became, in effect, a second prosecutor. 

     It is not error merely because a trial judge questions a witness.  It is well settled that a trial judge has discretion to question a witness "'to elicit the truth or to bring enlightenment on material issues which seem obscure,' as long as he does so in a fair and impartial manner."  
Smith
, 299 Ill. App. 3d at 1062, quoting 
People v. Wesley
, 18 Ill. 2d 138, 154-55, 163 N.E.2d 500 (1959). 

     
People v. Bullard
, 52 Ill. App. 3d 712, 367 N.E.2d 1017 (1977), and 
People v. Cofield
, 9 Ill. App. 3d 1048, 293 N.E.2d 692 (1973), illustrate situations in which trial judges' questioning of witnesses strayed well beyond a search for the truth and revealed their bias in favor of the State.   In 
Bullard
, the reviewing court found that the trial judge had exceeded the grounds of judicial propriety by questioning witnesses about their employment, social habits and associations.  The case was remanded for a new hearing.  
Bullard
, 52 Ill. App. 3d at 716-17 (the court noted that, in the proper case, such error might be deemed harmless and nonprejudicial).  In 
Cofield
, the reviewing court found that the trial judge had acted as an advocate for the State.  The judge took over the questioning of the victim from the State and threatened to send her to the Audy Home if she did not tell the truth.  The judge then proceeded to call and question all of the State's witnesses.  The reviewing court concluded that the trial judge did not act merely to clarify the issues but acted as both judge and prosecutor, exceeding the grounds of judicial propriety.  
Cofield
, 9 Ill. App. 3d at 1050-51; see also 
People v. Kuntz
, 239 Ill. App. 3d 587, 607 N.E.2d 313 (1993) (trial judge acted as an advocate when he prompted the State to seek a continuance to present more evidence).

     The defendant argues that Judge Schreier acted as an advocate in that he preempted postconviction counsel and the prosecutor from seeking clarification from the witnesses by questioning them first.  We disagree.  

     A trial judge does not "'assume the role of prosecutor merely because [his] questions solicit evidence material to the State's case.'"   
Smith
, 299 Ill. App. 3d at 1062, quoting 
People v. Sutton
, 260 Ill. App. 3d 949, 959-60, 631 N.E.2d 1326 (1994).  As we noted above, it is the facts and circumstances that determine the permissible scope of the trial court's questioning of witnesses.  See 
Smith
, 299 Ill. App. 3d at 1062 (where the defendant is being tried without a jury, the danger of prejudice stemming from a judge's questioning of a witness is decreased sharply).  
In a nonjury trial, prejudice is shown when the tenor of the court's questioning indicates the court has prejudged the outcome before hearing all the evidence.   
Smith
, 299 Ill. App. 3d at 1063.  

     Judge Schreier's questioning of the witnesses was done in a fair and impartial manner; he did not elicit inadmissible hearsay or intimate his opinion of the credibility of the witnesses.  See 
Smith
, 299 Ill. App. 3d at 1064.  Judge Schreier did not take over the management of the hearing to the exclusion of postconviction counsel and the prosecutor; both were permitted to question and cross-examine their witnesses.  Judge Schreier allowed postconviction counsel ample opportunity to develop her case.  His questioning did not indicate a bias in favor of the State but, rather, a conscious effort to determine the legitimacy of the defendant's claims in this case.        

     We conclude Judge Schreier did not act as an advocate for or display a bias in favor of the State.  Therefore, the defendant was not deprived of a fair hearing.

III.  
Final
 
Argument

     The defendant contends that Judge Schreier's continuous interruptions of defense counsel's closing argument denied him the right to make a closing argument.  

A. Standard of Review

     The defendant argues that 
de
 
novo
 review applies because neither the facts nor the credibility of the witnesses is at issue, and only a legal question is presented.  See 
Stevens
, 338 Ill. App. 3d at 810.  The State responds that Judge Schreier was properly exercising his discretion to keep the closing argument from impeding the fair and orderly conduct of the hearing.  See 
Herring v. New York
, 422 U.S. 853, 45 L. Ed. 2d 593, 95 S. Ct. 2550 (1975).  Regardless of which standard is applied in this case, we would reach the same result.

B. Discussion

     During the defendant's closing argument, Judge Schreier interjected comments in which he evaluated the evidence, expressed his disagreement with postconviction counsel about the witnesses' testimony and attempted to justify the sentence he imposed on the defendant.  However, Judge Schreier's interjections did not prevent postconviction counsel from making a coherent argument on behalf of the defendant, and counsel was permitted to finish her argument on the defendant's behalf.  
Judge Schreier did not belittle the defendant or defense counsel or her arguments.  Judge Schreier's interjections did not indicate that he prejudged the merits of the defendant's constitutional claim.  Rather, his comments indicated that he was methodically determining the validity of each argument to determine if the defendant had met his burden of proof.  

     We conclude that, in the context of a postconviction evidentiary hearing, Judge Schreier's conduct did not prevent the defendant from presenting his final argument.

     The judgment of the circuit court is affirmed.

     Affirmed.

     WOLFSON and GARCIA, JJ., concur.